# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| CHARLES LEMAN GERMAN | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION V-04-57 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM & ORDER

In this habeas corpus action, Texas prisoner Charles Leman German ("German") challenges the result of two prison disciplinary proceedings. Pending before the Court is Respondent Douglas Dretke's Motion for Summary Judgment (Dkt. #10). After considering the motion, the response, and the applicable law, the Court is of the opinion that Respondent's motion should be GRANTED.

**I.   Factual and Procedural Background**

At the time of the challenged proceeding, German was an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") serving an eighteen year sentence after pleading guilty to delivery of cocaine. *The State of Texas v. Charles Leman German*, No. 504060 (176th Judicial Dist. Ct., Harris County, Tex., Nov. 17, 1988).

On January 14, 2004, German was found guilty of fighting without a weapon causing a non-serious injury, a Level 2, Code 21.0B offense. Disciplinary Case # 20040137689 (the "fighting disciplinary"). As a result, the hearing officer, Captain Randolph ("Randolph"), assessed the following punishments: (1) 45 days loss of commissary and recreation privileges; (2) 15 days of solitary confinement; (3) reduction in line class status from S-3 to L-1; and (4) 30 days loss of good time credit. German appealed the decision on January 15, 2004, which was later denied on February 5, 2004. German filed a second appeal on March 3, 2004, which was later denied on March 22,

2004.

On January 21, 2004, German was also found guilty of extortion, a Level 1, Code 5.3 offense, and establishing and/or operating an unauthorized business or enterprise within TDCJ, a Level 2, Code 15.1 offense, specifically, performing legal work for other offenders for payment. Disciplinary Case #20040141089 (the "extortion/business disciplinary"). As a result of this offense Randolph imposed the following punishments: (1) 45 days loss of commissary, recreation, and property privileges; (2) 45 days of cell restriction; (3) 15 days of solitary confinement; (4) reduction in line class status from L-1 to L-2; and (4) 365 days loss of good time credit. German appealed the decision on January 26, 2004 which was later denied on February 5, 2004. German filed a second appeal on March 3, 2004, which was later denied on May 14, 2004. German filed the instant petition for writ of habeas corpus on June 7, 2004.

The two disciplinary actions against German are factually intertwined. In the fighting disciplinary action, German was found guilty of assaulting fellow inmate James A. Wells ("Wells") in the dining hall, by hitting Wells over the head with his fist. In the extortion/business disciplinary action, German was found guilty of doing legal work for Wells in exchange for pay and extortion regarding his actions in attempting to obtain the money for his legal work.

**II.  Claims and Allegations**

In his habeas petition, German lists a number of grounds upon which he claims to be entitled to habeas relief.

With respect to the punishments imposed from the fighting disciplinary action, German alleges the following:

> 1. He was denied due process when Randolph did not allow him to call two witnesses: Officer Moreno and a nurse.

2

2. He was denied equal protection because

    a. Randolph was biased; and

    b. Randolph did not allow him to call witnesses, put on a defense, or be held to the preponderance of credible evidence standard as other offenders are allowed to do under the disciplinary procedure, because German was in PHD and solitary.

With respect to the punishments imposed from the extortion/business disciplinary action, German alleges the following:

3. He was denied due process when

    a. the witnesses he requested were not called;

    b. the charging officers, having no personal knowledge of the facts, filed a falsified report;

    c. he was not allowed to hear or read the "extortion letter" introduced as evidence against him;

    d. no evidence was found, submitted, or presented at the hearing regarding the extortion charge;

    e. the vague provisions of Rule 15.1 failed to provide adequate notice that his conduct would constitute a rule violation;

    f. Randolph failed to recuse himself after German requested he do so in his opening statement based on Randolph's demonstrated bias; and

    g. substitute counsel failed to assist with his defense.

4. He was denied equal protection when

    a. the vague provisions of Rule 15.1 failed to provide adequate notice that his conduct would constitute a rule violation;

    b. Randolph failed to recuse himself for bias;

    c. he was not allowed to call witnesses or put on a defense.

German also makes the following additional allegations that are without reference to a disciplinary, grievance, or dispute resolution request number:

5. He was denied due process and equal protection when an additional 15 days of good time credit was "taken" as a result of a change in status from G6 to segregation, after a sham hearing, and after being transferred to the Michael Unit when German did not meet the criteria for segregation.

6. He was denied due process and equal protection when 15 days of additional good time credit was "taken" as a result of placing him in segregation, because he was unable to participate in activities for which he would earn good time credit.

7. The TDCJ-CID administrative rules are contradictory, stating that inmates in administrative segregation will not receive any of the 15 days, then stating that offenders who are excused from participating for any reason receive good conduct time, including the 15 days.

## III. Summary Judgment Standard

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998).[1] The burden is on the movant to convince the court that no genuine issue of material fact

---

[1] The Fifth Circuit has held that Rule 56 applies only to the extent it does not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts), *cert. granted in part on other grounds, and dism'd*, 124 S. Ct 1652 (2004). Therefore, 28 U.S.C. § 2254(e)(1)–which mandates that findings of fact made by a state court are "presumed to be correct"–overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *See id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *See id.*

4

exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 106 S. Ct. at 2552; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

**IV.     Analysis**

     **A.     German's Grounds 2, 3.e, 3.g, 4, and 5-7 are Unexhausted**

Applicants seeking habeas relief under 28 U.S.C. § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). In doing so, the petitioner must present all factual claims and legal theories for review by the state courts before presenting them to the federal courts. *Id*. Generally, the federal claims must be fairly presented to the highest court of the state either in a petition for discretionary review or in an application for writ of habeas corpus. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990). However, the Texas courts do not entertain challenges to prison disciplinary hearings.

*Ex parte Brager*, 704 S.W.2d at 46. The TDCJ-CID has a two-step procedure to appeal a disciplinary finding and punishment. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). Consequently, prisoners must exhaust the administrative grievance process before filing habeas petitions challenging disciplinary proceedings. *Baxter v. Estelle*, 614 F.2d 1030, 1031-32 (5th Cir. 1980).

>As it applies to his petition, the AEDPA provides:
>
>(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
>(A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>(B)(i)  there is an absence of available State corrective process; or
>
>(ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

The exhaustion requirement is "grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056 (1989) (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198 (1982). Failure to exhaust all administrative remedies will result in dismissal for failure to exhaust. *Baxter*, 614 F.2d at 1031-32 (citing *Lerma v. Estelle*, 585 F.2d 1297, 1298 (5th Cir. 1978)). Additionally, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (quoting *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276 (1982)).

Respondent has shown that German's grounds for relief 2, 3.e, 3.g, 4, and 5-7 above have

been not been presented for review by the prison administration.[2]  If German were to present these claims to the TDCJ-CID Offender Grievance office in another grievance form, he would be denied relief because his Step One grievance must be timely filed within fifteen days of the date the disciplinary is decided and his Step Two grievance must be timely filed within fifteen days of the denial of his Step One grievance.[3]  If German were to present his claim to the Texas Court of Criminal Appeals in a state writ, he would be denied relief because disciplinary actions are not cognizable on state habeas review.  *Ex parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim. App. 1988); *Ex parte Brager*, 704 S.W.2d at 46.  The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state remedies, and the state forum where he would be required to exhaust them would now find his claims procedurally barred.  *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S. Ct. 2546 (1991).  In such cases, such as the one at bar, the federal procedural default doctrine precludes federal habeas corpus review.  *Id.*

Although federal habeas corpus review is available when administrative remedies either are unavailable or wholly inappropriate to the relief sought, German's failure to properly exhaust his administrative remedies is due neither to "an absence of available State corrective process," nor to

---

[2] German's claim 3.e is worthy of more attention.  In his Step Two grievance for the extortion/business disciplinary, German argued that he never engaged in the activity prohibited by the Offender Handbook and that the language in the handbook was different than that in Rule 15.1 of the Disciplinary Rules and Procedures for Offenders.  He did not allege that he did not have notice of the wording of Rule 15.1, that Rule 15.1 was vague, or that he did not know that his conduct would constitute an offense.  Therefore, the Court finds that German did not completely exhaust this claim.

[3] Texas Department of Criminal Justice, *Offender Handbook, available at* http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf, pg. 52 (last visited Sept. 11, 2005).

7

circumstances rendering that process "ineffective to protect the rights of the applicant." 28 U.S. C. 2254(b)(i) and (ii). Moreover, exceptions to the exhaustion requirement for federal habeas corpus review apply only in extraordinary circumstances and German bears the burden of showing the futility of an administrative review. *State v. Fuller,* 11 F.3d 61, 62 (5th Cir. 1994); *cf. Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (holding that to overcome the procedural bar, a petitioner must demonstrate adequate cause for the default and actual prejudice resulting from such default). German has failed to argue, much less establish, extraordinary circumstances, futility of the administrative process, or actual prejudice. Additionally, German has not shown that he is actually innocent of the disciplinary offense committed. Accordingly, the Court finds these claims to be barred under the federal procedural default doctrine.

### B. Loss of Privileges

German may not seek relief in this proceeding to the extent that he challenges the validity of the loss of privileges which affected the conditions of his confinement without affecting the length of his sentence. In order to obtain habeas relief, a prisoner must establish a violation of a constitutional right. *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994). "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S. Ct. 2293 (1995). Any claims concerning loss of commissary, recreation, and property privileges, cell restriction, and solitary confinement have no basis in law as such punishments are not actionable in federal court because German is a prisoner with limited rights and expectations. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

With respect to German's loss of privileges and cell restriction, the withdrawal of permission

to engage in prison activities that are not available to all prisoners is merely a change in the conditions of confinement and therefore cannot be challenged in this proceeding. *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997). Moreover, habeas challenges are limited to those actions that actually affect the length of a prisoner's incarceration. *See Malchi*, 211 F.3d at 958 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S. Ct. 1827 (1973)).

Respecting the imposition of a total of 30 days of solitary confinement, absent extraordinary circumstances, administrative segregation is an incident to the ordinary life as a prisoner and will never be a ground for a constitutional claim. *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996); *see also Sandin*, 115 S. Ct. at 486 (1995) (holding that no liberty interest was implicated by discipline in segregated confinement).

Similarly, German's challenge to his demotion in classification is legally baseless. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Although the demotion may have affected German's ability to accrue good time credits, it is not actionable because there is no certainty that the length of his confinement was changed. *Sandin*, 115 S. Ct. at 2302. *See also Malchi*, 211 F.3d at 957 (effect on prisoner's good time earning status upon timing of release was too speculative to afford constitutionally cognizable right).

Accordingly, German's claims regarding loss of commissary, recreation, and property privileges, solitary confinement, and line class reduction, fail to state a claim that entitles him to federal habeas corpus relief.

    **C.**    **German's Exhausted Due Process Claim Regarding the Fighting Disciplinary**

As the Respondent concedes that German was eligible for mandatory supervision,[4] German may seek relief with regard to the good time credits which were actually forfeited as a result of the disciplinary proceeding. *See Malchi*, 211 F.3d at 957. Unlike a defendant in a criminal trial, a prisoner in a disciplinary proceeding has limited due process rights. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). These rights are met when the prison officials "(1) provide advance written notice of at least twenty-four hours to the prisoner; (2) issue a written statement of the factfinders as to evidence relied upon and their reasons for action; and (3) offer the prisoner an opportunity to call witnesses and present documentary evidence." *Houser v. Dretke,* 395 F.3d 560, 562 (citing *Wolff*, 418 U.S. at 563-68, 94 S. Ct. at 2978- 80).

With regard to the fighting disciplinary action, the record shows that German was given written notice of the disciplinary hearing on January 12, 2004, at 3:10 p.m.[5] The hearing occurred more than twenty-four hours later, on January 14, 2004.[6] German attended the hearing where he was assisted by a counsel substitute. He was provided with a final report of the disciplinary hearing stating the evidence relied upon and the reason for the disciplinary action taken.[7]

German argues that he was denied due process when Randolph denied his witnesses. An

---

[4] Respondent's Motion for Summary Judgment, pg. 9.

[5] D.R.1, pg. 1. "D.R." refers to the disciplinary records for both disciplinary actions. "D.R.1" will designate the records for disciplinary cause number 20040137689 and "D.R.2" will designate the records for disciplinary cause number 20040141089.

[6] *Id.*

[7] *Id.*

10

offender's right to call witnesses is not absolute; the right may be denied if granting the request would be "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S. Ct. 2979. In addition, to be entitled to relief, a federal habeas corpus petitioner must demonstrate that "the error at issue 'had substantial and injurious effect or influence in determining' the proceeding's outcome." *Williams v. Johnson*, 171 F.3d 300, 307 (5th Cir. 1999) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993)); *see also Sosa v. Dretke*, 2004 WL 1836206, *2 (quoting *Williams v. Johnson*, 171 F.3d 300, 307 (5th Cir. 1999) (noting that petitioner failed to demonstrate that the exclusion of evidence "'had substantial and injurious effect or influence in determining' the proceeding's outcome").

German asserts that he was not allowed to call a single witness in his behalf. Contrary to German's assertion, when asked at the beginning of the hearing what witnesses he would like to call, only Officer Garcia ("Garcia") was named.[8] Garcia was in fact called as a witness.

Later in the hearing, German requested that Officer Moreno ("Moreno") also be called as a witness. It is apparent from the record that German initially intended to call Moreno instead of Garcia. At the hearing Garcia's testimony made clear that he was not the officer inside the dining hall at the time of the incident. The charging officer, Lieutenant Esparza ("Esparza"), testified that Moreno was the officer inside the chow hall and that he asked Moreno what transpired. Esparza also testified that he had seen the altercation personally through the exit door from outside the dining hall. On cross examination it became clear that Esparza asked Moreno what had happened only to find out what Moreno had seen. Esparza clearly noted that he had seen German strike Wells on the head through the window. Randolph denied German's request to call Moreno as a witness because

---

[8] *See* Hearing Tape.

11

he had already heard from Esparza, who testified that he had seen the altercation personally.

German objected to Randolph's decision not to call Moreno and claimed that Moreno's testimony would have contradicted Esparza's testimony. Moreno argues that the outcome of the trial would have been different if Randolph had called Moreno. Specifically, German asserts that it would have been clear that Esparza testified untruthfully. In support of his argument German refers to two statements that he asserts are contradictory. On an Offense Report dated January 9, 2005, Esparza wrote "I looked into the offender chowhall thru the window on the door."[9] Later, on an Investigation Work Sheet dated January 13, 2004, Esparza wrote that "I was outside but I could see through the edge of the door."[10]

The Court concludes that German was not prejudiced by Randolph's decision not to call Moreno. First, Randolph had already heard that Esparza had seen the altercation. Any statement made by Moreno tending to discount this evidence would not have changed the fact that Esparza was a direct witness to the assault made by German. Second, German's emphasis upon what he claims are conflicting statements by Esparza is based upon a distinction without a difference. Regardless of whether Esparza saw though the window or the edge of the door, the fact remains that he witnessed the events. The minor difference between the manner in which Esparza reported the events does not discredit his testimony.

German also complains that he was not allowed to call a nurse to testify on his behalf. Although German had written questions that were prepared in anticipation of calling the nurse, there is no record that he ever requested Randolph to call the nurse as a witness. Accordingly, there is no

---

[9] D.R.1 at 2.

[10] *Id.* at 6

evidence that he was denied the right to call her at his disciplinary proceeding.

The Court holds that the record demonstrates that due process was observed during the hearing as required by *Wolff*. Captain Randolph's reliance on charging officer Esparza's report alone would have been sufficient to support his findings. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768 (1985); *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001); *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995). The Supreme Court has held that "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent,* 472 U.S. at 457, 105 S. Ct. at 2775. In light of the facts, the hearing officer's rulings will not be disturbed. *Cf. Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). German's unfounded challenges to the results of his fighting disciplinary proceeding shall be **DISMISSED**.

### D. German's Exhausted Due Process Claim Regarding the Extortion/Business Disciplinary

Again, because he is eligible for mandatory supervision, German may seek relief with regard to the good time credits which were actually forfeited as a result of the disciplinary proceeding. *See Malchi*, 211 F.3d at 957. The Court thus must determine whether the hearing officer respected German's limited due process rights. *See Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 2975 (1974).

#### 1. Failure to Call Witnesses

It is not clear from German's briefing which witnesses he was not allowed to call. During the extortion/business disciplinary, German requested that two inmates be called as witnesses.[11]

---

[11] Hearing Tape.

German, explained that the testimony of these witnesses would show that Wells initially approached German and offered him money to do legal work and that it was not German who initially requested payment for the legal work. Though he did not call these inmates as witnesses, Randolph summarized on the Hearing Work Sheet the testimony that German stated they would have provided and wrote "stipulated."[12] German is unable to demonstrate that he was prejudiced by Randolph's refusal to call his witnesses. Even if Randolph's actions denied German's requested witnesses, such testimony would not have negated any of the charges brought against German at the extortion/business disciplinary. Both offering and requesting compensation for legal work is a violation of TDCJ-CID rules and constitutes conducting illegal business within TDCJ-CID.[13] Moreover, the extortion charge rested on German's method of attempting to obtain the compensation (i.e., using threats), not on whether he initially requested payment or the other inmate initially offered it.[14]

Captain Randolph also denied German's request to call Officer Flores ("Flores"). The Hearing Work Sheet indicates that German stated that not calling Flores was "alright."[15] Furthermore, it is not clear from the record what German alleges Flores would have testified if he had been called. Thus, German has not demonstrated that he was prejudiced by the failure to call

---

[12] D.R.2, pg. 12.

[13] Texas Department of Criminal Justice, *Offender Handbook* at 94; *see also* Texas Department of Criminal Justice, Correctional Institutions Division, *Disciplinary Rules and Procedures for Offenders*, Rule 15.1 *available at* http://www.tdcj.state.tx.us/publications/cid/GR-106%20Web%20Final%20doc%203-23-05.pdf, pg. 30 (last visited Sept. 11, 2005).

[14] D.R.2 at 1, 2.

[15] *Id.* at 12.

Flores as a witness.

On the Service Investigation Work Sheet, Wells' mother was also listed as a requested witness.[16] German's witnesses statement indicates only that Wells' mother was aware of the legal work German was performing for her son and that there was a monetary arrangement involved.[17] The failure to call Wells' mother did not result in prejudice to German, because there was evidence that German requested the money and threatened Wells for failure to pay.

### 2. Allegation That the Charging Officers Had No Personal Knowledge of the Facts and Filed a Falsified Report

German argues that he was denied due process when the charging officer Schroedter ("Schroedter") filed a falsified report and had no knowledge of the offense. There is no evidence in the record suggesting that any of the information in Shroedter's report was falsified. To the contrary, the evidence indicates that Schroedter did have personal knowledge of the offense that he acquired through a personal investigation.[18] Thus, German's allegations are conclusory and without merit. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

### 3. Allegation Regarding the Extortion Letter

German alleges that he was denied due process because he was not allowed to hear or read the "extortion letter" introduced as evidence against him. There is no indication in the rececord that German requested to hear or read the letters introduced against him. Therefore, there is no evidence that he was ever denied the right to hear or read the evidence against him. German's allegation is

---

[16] *Id.* at 11.

[17] *Id.* at 3.

[18] *Id.* at 2; Hearing Tape.

15

conclusory and without merit. *Schlang*, 691F.2d at 799.

### 4. German's Claim That No Evidence Was Found, Submitted, or Presented at the Hearing

German's claim that he was denied due process when no evidence was found, submitted, or presented is flatly refuted by the record. The record contains the charging officer's report, to which the extortion letter is attached, and the testimony of the charging officer that the prison authorities found a note demanding payment that was in German's handwriting.[19]

### 5. German's Claim That the Hearing Officer Improperly Failed to Recuse Himself

Finally, German claims that he was denied due process when Randolph refused to recuse himself after German requested him to do so because of bias. German's allegations of bias are based upon the fact that he had helped other inmates file grievances and lawsuits against him and other officers and because German had two hotly contested verbal confrontations with him regarding how he had handled the fight case. Aside from his own conclusory allegations, German has not alleged any facts or referred the Court to any evidence which would establish that Randolph was actually unfair and/or not impartial. German's arguments are conclusory and without merit. *Schlang*, 691F.2d at 799.

The record demonstrates that due process was observed during the hearing as required by *Wolff*. The record shows that German was given written notice of the extortion/business disciplinary hearing on January 16, 2004, at 9:20 a.m.[20] The hearing occurred more than twenty-four hours later,

---

[19] D.R.2 at 2; Hearing Tape.

[20] D.R.2. at 1

on January 21, 2004.[21] German attended the hearing where he was assisted by a counsel substitute. He was provided with a final report of the disciplinary hearing stating the evidence relied upon and the reason for the disciplinary action taken.[22] Although Randolph refused to call a number of witnesses, German failed to demonstrate that he was prejudiced as a result. There is no evidence that any witnesses were arbitrarily excluded during the proceedings. *Thomas v. Estelle*, 603 F.2d 488, 490 (5th Cir. 1979).

Captain Randolph's reliance on charging officer Schroedter's report alone would have been sufficient to support his findings. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768 (1985); *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001); *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995). As stated earlier, "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent,* 472 U.S. at 457, 105 S. Ct. at 2775. German's unfounded challenges to the results of his extortion/business disciplinary proceeding shall be **DISMISSED**.

### Certificate of Appealability

Under 28 U.S.C. § 2253, German needs to obtain a certificate of appealability before he can appeal this Memorandum & Order dismissing his petition. A certificate of appealability may be issued only if German makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, German must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998); *see also*

---

[21] *Id.*

[22] *Id.*

*Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). For the reasons stated in this Order, German has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996); 395 F.3d at 561. The Court **DENIES** the issuance of a certificate of appealability in this action.

**Conclusion**

The Court **ORDERS** the following:

1. Respondent's Motion for Summary Judgment (Dkt. #10) is **GRANTED**.

2. This action is **DISMISSED**.

3. A certificate of appealability is **DENIED**.

**SIGNED** on this 26th day of September, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE